FREDERIC W. PAINE, Assignee, v. JOHN T. GUNNISS, Receiver.[1]

February 6, 1895.

No. 9167.

**Property Subject to Levy—Claim for Unliquidated Damages.**

A. contracted to construct a building for B., to be paid for in instalments as the work progressed. While the work was in progress, C., a creditor of A., levied upon all the money, debts, and credits in the hands of B., and all contract rights due and accruing from him to A. At the time of the attempted levy there was nothing due or payable to A. on the contract, and whether there would be thereafter was contingent upon his further performance. Subsequently, in accordance with the provisions of the contract, B., because of A.'s default, declared his employment terminated, and completed the building himself. After the building was completed, A. made a claim against B. for extra work alleged to have been done on the building, and for unliquidated damages suffered by delays in the work caused by B. The parties compromised and liquidated the claim at a gross sum, but it does not appear how much of the sum was allowed on account of unliquidated damages, and how much, if any, for extras. *Held,* that the levy was ineffectual. Neither the inchoate contingent claim on the contract, nor the claim for unliquidated damages, was subject to levy, and the subsequent adjustment of the amount by the agreement of the parties did not relate back, so as to give effect to the prior attempted levy.

Appeal by John T. Gunniss, as receiver of A. V. Kelley & Co., insolvents, from an order of the district court for St. Louis county, Ensign, J., denying the motion of the receiver to vacate and set aside a certain levy by virtue of an execution issued upon a judgment which was recovered by the Iron River Sandstone Co. against A. V. Kelley & Co., and was assigned to Frederic W. Paine. Reversed.

The motion was submitted upon an agreed statement of facts, the material parts of which are given in the opinion.

*J. D. Holmes* and *Cash, Williams & Chester,* for appellant.

The board of education being a public corporation, property of other persons in its possession is not subject to levy. McDougall v. Board of Supervisors, 4 Minn. 130, (184); Roeller v. Ames, 33 Minn.

[1] Reported in 62 N. W. 280.

132, 22 N. W. 177; City of Chicago v. Hasley, 25 Ill. 595; Merwin v. City of Chicago, 45 Ill. 133. Only absolute and adjudged debts are subject to levy under our statute. Claims for torts or unliquidated damages cannot be seized. Webber v. Bolte, 51 Mich. 113, 16 N. W. 257; Crandall v. Blen, 13 Cal. 15; Stromberg v. Lindberg, 25 Minn. 513. The statute provides that such claims shall be reached by supplementary proceedings. Knight v. Nash, 22 Minn. 452; Habenicht v. Lissak, 78 Cal. 351, 20 Pac. 874; Lowenberg v. Greenebaum, 99 Cal. 162, 33 Pac. 794.

*McCordic & Crosby,* for respondent.

In McDougall v. Board of Supervisors it was decided that public corporations are not liable to garnishment. The opposite rule is ably stated in Waterbury v. Board of Commissioners, 10 Mont. 515, 26 Pac. 1002. The true rule would seem to be stated in Dillon, Mun. Corp. § 101. That rule has been followed in this state where property in the hands of a public corporation was taken upon supplementary proceedings. Knight v. Nash; Roeller v. Ames. In McDougall v. Board of Supervisors it does not appear that the debt garnished was on a salary of a public officer. The present tendency is to adopt the rule in Dillon. Pendleton v. Perkins, 49 Mo. 565. In Knight v. Nash the debt was unliquidated. That extras had not been paid for appears by the statement that payments already made were "to apply on said contract price," etc. The claim existed before the levy, and had not been paid. The estimates made from time to time did not include this claim. At the time of the levy, Kelley & Co. were owners of the chose in action. There was no contingency about the claim. The right was a vested one, and the amount to be paid was to be determined by the contract. Even if the interest were contingent, it could be levied on. The interest of a partner in a partnership is contingent, and that can be levied on. Barrett v. McKenzie, 24 Minn. 20; Wiles v. Maddox, 26 Mo. 77. A contingent remainder can be levied on. White v. McPheeters, 75 Mo. 286; Wiant v. Hays, 38 W. Va. 681, 18 S. E. 807. Later cases in California do not follow the reasoning in Crandall v. Blen, but allow a levy and sale under execution. Wright v. Ward, 65 Cal. 525, 4 Pac. 534; Payne v. Elliot, 54 Cal. 339; McBride v. Fallon, 65 Cal. 301, 4 Pac. 17.

BUCK, J. The facts in this case were stipulated and agreed upon by the respective parties. On August 24, 1892, the firm of A. V. Kelley & Co. entered into an agreement with the board of education of the city of Duluth for the erection of a certain school building in said city. The work was to be well and sufficiently performed and finished, under the direction and to the satisfaction of a superintendent; and the contractors were to proceed with the work in a prompt and diligent manner, and to finish it before August 15, 1893, and the roof of the building was to be finished by May 1, 1893. In case of default, the contractors were to pay the board of education, as liquidated damages, the sum of $50 per day for each day of such default. The contract further provided that if the contractors should at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements on their part, such refusal, neglect, or failure being certified by the superintendent, the board of education were at liberty, after three days' written notice to the contractor, to provide such labor and materials, and deduct the cost thereof from any money due or thereafter to become due to the contractors under the contract; and if the superintendent certified that such refusal, neglect, or failure was sufficient ground for such action, the board of education was at liberty to terminate the employment of the contractors, and finish the work itself. The original contract price was the sum of $83,842.50, subject to additions or alterations. Eighty-five per cent. of work done and materials furnished in place was to be paid on estimates furnished by the superintendent as the work progressed. Prior to August 12, 1893, the contractors had been paid by the board of education, to apply on this contract, the sum of $70,512.33, which sum was in excess of 85 per cent. of the estimated value of all labor and material then placed in the building under the contract. All sums due the contractors upon estimates prior to August 12, 1893, had been fully paid; and, in addition to the sum so paid, the board of education had accepted orders of said contractors on account of labor and material furnished under said contract to the amount of $8,653.79.

On August 12, 1893, the Iron River Brown Stone Company re-

covered judgment against the contractors in the sum of $1,771.85, for material furnished them and used by them in the construction of said building; and upon the same day execution was issued upon said judgment, and the sheriff of St. Louis county served upon the board of education a certified copy of the writ of execution, together with a notice, the substance of which is as follows: "I, Paul Sharvy, sheriff of St. Louis county, by virtue of the power vested in me by law, and in accordance with the provisions of section 305, chapter 66, General Statutes of Minnesota, 1878, do hereby levy upon any and all moneys, debts, or credits in your hands, and all contract rights due and accruing to A. V. Kelley & Company, the said judgment debtors. And you are hereby required to return to me a just and true account of any and all moneys, debts, or credits in your hands, due and accruing to the said A. V. Kelley & Company." This execution was renewed from time to time.

Afterwards A. V. Kelley & Co. became insolvent; and by order of the court dated October 2, 1893, they were declared to be insolvent, and a receiver of said insolvent estate was duly appointed. On August 19, 1893, the superintendent in charge of the construction of the building certified to the board of education that the contractors had neglected and refused and were unable to supply a sufficiency of properly skilled workmen and material of the proper quantity to complete said building, and that such failure and neglect were, in his judgment, sufficient ground for the board, under the contract, to terminate the employment of the contractors, and to authorize the board to complete the building under its own directions; and the contract was terminated accordingly. In completing the building, the board paid out, after August 19, 1893 (including the said sum of $8.653.79, for which they had become responsible prior to August 12, 1893), the sum of $14,598.56. After the completion of the building by the board, the contractors and the receiver presented to it a claim of $14,000, in addition to all sums theretofore paid by the board. Such claim was based partly on account of damages suffered by the contractors through delays caused by the board, partly on account of delays from unforeseen difficulties in the excavation for the foundation of said building, and partly for extras claimed to have been furnished. It was claimed that the delays were suffered and the extras furnished prior to August 12, 1893, the date of the

levy. After extended negotiations, the board, on April 7, 1894, agreed to pay, and the receiver agreed to accept, in full settlement of said claim, the sum of $4,165.13, and that sum is now due. Upon these facts, the receiver moved to vacate and set aside the levy or attempted levy, as being ineffectual, and the court denied the motion.

We have made quite a lengthy statement of the facts, that the case may be fully understood. Was this attempted levy, made by the sheriff, a valid and effectual one? We are of the opinion that it was not. At the time when this attempted levy was made, there was nothing due or payable to the contractors or the receiver upon the contract, and whether there ever would be was contingent upon its further performance. Neither the contractors nor the receiver ever performed any part of the work after the levy, and neither the inchoate contingent claim on the contract nor the claim for unliquidated damages was subject to levy, and the subsequent adjustment of the amount by the agreement of the parties did not relate back so as to give effect to the prior attempted levy. It appears from the agreed facts that the contractors were unable to perform their part of the contract; that they had been paid in excess of the amount due them; and certainly whether they would earn any more money upon the contract would depend upon their power and ability to do so. It was therefore a contingency depending upon the will and ability of the contractors to go on with the work. But as they were insolvent and unable to further perform their part of the contract, and had been paid in excess of what was due them, it can hardly be presumed that they would make any further attempt to go on with the contract.

There was no method of arriving at the amount of damages arising out of the claim for delay. The amount, if any, rested in opinion merely, and could not in any possible manner be ascertained by computation or calculation, and there was no evidence by which the value of the different items can be separately determined. The attempted levy was more of an ideal or imaginary one than one made upon an absolute debt. The claim for damages was not a debt, credit, or evidence of indebtedness, within the meaning of G. S. 1878, c. 66, § 300 (G. S. 1894, § 5449). The claim for damages for delays and for extras was compromised and liquidated at a gross

sum, and it does not appear how much of the sum was allowed for unliquidated damages, nor how much, if any, was allowed for extras.   If, long subsequent to the date of the attempted levy, the board of education deemed it equitable or for the best interest of the city to compromise this claim, and did so, that did not aid the plaintiff.   Legally, there might not have been a dollar due A. V. Kelley & Co.   If such an attempted levy is upheld, it would frequently be quite as injurious to one party as the other, and its mischievous effects would most seriously interfere with carrying out building contracts, and be detrimental to the business interests of the country.

As this disposes of the case, we need not discuss or determine the other question raised, viz. if there was an absolute debt existing in favor of Kelley & Co. against the board of education, a public corporation, whether it could be levied upon by execution.

The order of the court below denying the motion to vacate the levy, and adjudging the levy to be valid and in full force, is reversed.